Richardson, J.
dissenting. I consider this case important as a precedent: and the more important as we have unanimously decided in another case,' that Captain Wad-kins is prima facie to be respected as an officer, may order Courts Martial, and fine men, like other Captains. Because he exhibits a commission in form, and is of course an officer de facto. But his right to hold it is now to be tested.
The material facts are as follows.
Captain Culverson commanded the beat company ; and gave notice, at a muster, that he resigned his commission. The men present went immediately into an election ; and chose Henry Wadkins, Captain. He got a certificate, and applied to Colonel Jones, the commander of the regiment, for a commission. .Jones declined doing so. This happened in eighteen forty-one. But Wadkins took command of the company. So far, it was an undisguised usurpation of an office, both in law and fact. But in 1842, Jones was *45 succeeded by Col. Hudgens ; who gave the commission of Captain to Wadkins ; and he has continued in his command ever since. He thus became an officer, in fact; and ostensibly, in law. It follows, that he is to be obeyed and respected, as Captain, while he holds such a commission.
But this question arises. Is the commission, so obtained by Henry Wadkins, good and valid in law ; or, is it null and void, and the supposed Captain still a private in his beat company ? If the latter, he i's still the usurper of an office; and subject to the proceeding-by quo warranto, to deprive him of his imputed commission.
This court has very little to do with the militia system, especially since the Act of 1841. Perhaps as little as with the taxing power; or the fiscal system; which belongs so exclusively to the Legislature.
But as against the mere assumption of an office, even in those departments, in virtue of the mere formula of an official commission, there can be no doubt of both the right and duty of the court of sessions to proceed by the writ of quo warranto,' and to order the divestiture of the supposed commission, if illegally obtained. This is what I have to point out.
Whenever an election has been holden by the order of the Colonel, managers appointed, notice given, (fee. according to the Act, this court may not entertain the question, whether the election of a militia officer has been regular or objectionable. Such questions are referred, by the Act of 1841, Sect. 23, to the Colonel, Lieut. Colonel and Major, and their decision is made conclusive in all cases of contested elections. But the court can and does inquire whether any election, in the sense and. meaning of a lawful election, has been ordered and holden by the proper authority, in order to justify the issuing of any commission. Because, without the previous election no commission can be issued. On this subject the 5t[i sect, of the Act of 1816, 8 stat. 534, under which this case comes, enacts “That when any vacancy shall’take place in a Captain’s commission, the Lieut. Colonel (fee. shall appoint two fit and proper persons (fee. to manage the election, who shall hold the polls, at (fee. (fee. from eleven o’clock in the *46 morning untill three o’clock in the afternoon, after having advertized the same for twenty days before the election, <fec. (fee. and on the same evening the managers shall count over the votes and declare the election.” And then the Colonel may confer the commission.
The qualified voters are designated in the second sect. p. 533, i e. white men above eighteen years of age, residing within the beat. And by the Act of 1833, sect. 8, 8 Stat. 569, must have resided six months in the State. The Act of 1841, 22 and 23 sections, page 186, reducing the various Militia Acts to one, reenacts the same provisions ; makes the decision of the Colonel, Lieut. Colonel and Major, conclusive on contested elections, and requires that all resignations of militia officers shall be in writing (sec. 28,) to the proper commanding officer (fee. None other Can accept the commission and declare the vacancy. Thus, then, we have what is called an election, clearly defined. It is not a mere gratuitous nomination. Now, then, are those idle ceremonies to be dispensed with, by the militia men assembled at a Beat muster, when their Captain choses to say “I resign my commission.” It was not his right so to resign ; nor theirs, to receive his resignation ; and still less for them to appoint a successor, and so disfranchise the absent militia men and exempts, of their right of ballotting at the regular polls. The object of such, election of a Captain, like that of all popular elections, is to ascertain the settled will of the qualified voters, by the means of written ballots, and to avoid any appointment to office by mere acclamation; or in any other way than by the Act. The election, of course, requires managers, fair public notice, and an appointed time for balloting. True, the ultimate aim is to ascertain the will of the majority. But such will must be made manifest in the way directed by the constitution or the laws enacting how the sense of the people shall be taken, and their final will witnessed and approved.
It is the way, manner, time, notice and managers, that give the right of the popular appointment to office. So plain a distinction cannot be mistaken. There has. been a popular recommendation of Mr. Wadkins. But no legal *47 election whatever, and he has no right to hold a Captain’s commission in virtue of the former alone. But the argument'is this. First, contested elections are to be decided by the Colonel, Lieut. Colonel and Major of the regiment (by the 23d. sec. of the militia law.) And this court cannot interfere in such cases. Secondly, the intruding officer may be cashiered by a court marshall. But the rejoinder is obvious. There has been no election to contest, and Mr. Wadkins is not charged with any military crime, or misdemeanor, to be cashiered. He is simply charged with this civil offence; that by assuming that there had been an election, when there was none, he managed to obtain a commission, and exercises practically the duty and privilege of a Captain of a beat company. He might as well have picked up a commission in the street, and proceeded in the same way. It is as plainly usurpation in the one case as the other. A'sheriff or tax collector might get a commission in the same way, i e. by a so called election, or by the good will of divers persons and a certificate. Now, would it not be in vain to answer to such a charge, that the Act leaves all such contested elections to the board of managers of sheriffs elections, or that the intruding sheriff might be impeached, and so get rid of? Such an answer would be mockery, when in fact there was no misdemeanor in office, and no legal officer, no election, and of course no managers to investigate possible objections to the cofiducting of the polls. Is it not then manifest, that there is.no other way of proceeding effectually against such intruders into office, but by the superintending conservative powers of the court of sessions, in order to enforce the Act?
This superintending power is not in derogation from the authority given to the Colonel, Lieut. Colonel and Major of the Regiment; but ancillary to it;, and in order to compel an election under the Act for their authority to act upon. The precedent is important, and being clearly erroneous, I dissent.